UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | CHAPTER 11 |
| 201 FOREST STREET LLC & | ) | |
| 219 FOREST STREET LLC | ) | CASE NOS. 07-42296-JBR |
| | ) | 07-41768-JBR |
| | ) | |
| DEBTORS | ) | (Jointly Administered) |
| | ) | |
| _____ | ) | |
| 201 FOREST STREET LLC, | ) | |
| 201 FOREST STREET REALTY TRUST, | ) | |
| 219 FOREST STREET LLC, & | ) | |
| 219 FOREST STREET REALTY TRUST | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | AP. NO. 07-4097 |
| | ) | |
| LBM FINANCIAL LLC & | ) | |
| MARCELLO MALLEGNI, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

**FINAL ORDER**

On June 30, 2009, the Court issued its Memorandum of Decision and Order in this adversary proceeding. [ # # 185, 186]. The Court entered final orders with respect to Counts II, V, VIII, and XI and requested the Plaintiffs to file mathematical computations and a fee application with respect to Counts I, III, IV, VI, IX, X, XII, and the Objection to the 219 Claim. [# 186]. On July 30, 2009, the Plaintiffs complied with this request. [ # # 201, 206]. On August 13, 2009, the Defendants filed their response to the Plaintiffs' mathematical computations and fee application to which the Plaintiffs filed a reply.

[# # 213, 216].  The Court now enters this final Order with respect to Counts I, III, IV, VI, IX, X, XII, and the Objection to the 219 Claim:

## COUNT I
**(Disallowance of the Default Rate of Interest on the December Note as a Penalty)**

1. The default interest charged in connection with the December Note is DISALLOWED.

2. The late fees for the December Note are reduced from 10% to 5%.

3. There was a balance owed on the December Note in the amount of $156,274.09[1] as of September 17, 2007.  The balance reflects the deficiency claim that arose upon the September 17, 2007 sale of the 219 Forest Property.  LBM was not entitled to interest thereafter as its deficiency claim is unsecured.  201 Forest's guaranty of the December Note was *void ab initio*.  *See* Memorandum of Decision, Section II. F.  As such, there is an unsecured balance on the December Note in the amount of $156,274.09.

## COUNT III
**(Disallowance of the Default Rate of Interest on the March Note as a Penalty)**

4. The default interest charged in connection with the March Note is DISALLOWED.

5. The late fees for the March Note are reduced from 10% to 5%.

6. The March Note has been paid in full.[2]

## COUNT IV
**(Declaratory Judgment as to Amount Owed on the March Note)**

7. $32,459.11 is to be reapplied to the March Note as of June 17, 2002.

8. The March Note has been paid in full.[3]

---

[1] This calculation was proposed by the Defendants and agreed to by the Plaintiffs. *See* Docket # 213 at ¶ 5; Docket # 216 at ¶ 1.

[2] The parties agree that the March Note was paid in full by a portion of the proceeds from the sale of the 219 Forest Property. *See* Docket # 213 at ¶ 9; Docket # 216 at ¶ 2; *see generally* Memorandum of Decision, Section I. L. [Docket # 185].

## COUNT VI *
**(Unfair and Deceptive Acts and Practices: M.G.L. ch. 93A)**

9. The interest and late fees that accrued on the March Note consequent to the misapplication of the $32,459.11 payment total $182,329.67.[4] In accordance with the Memorandum of Decision this figure shall be trebled and added to $1,101,619.14 as 219 Forest's total 93A damages. *See* Memorandum of Decision, Section II.E.5 and footnote 38. [# 185].

10. Judgment for the Plaintiff 219 Forest against LBM in the amount of $1,648,608.15 with pre-judgment interest at a rate of 12 percent per annum[5] plus $577,729.50[6] for 219 Forest's reasonable costs and attorney's fees for prosecuting this 93A Claim.

## COUNT IX
**(Disallowance of the Default Rate of Interest on the December Note as a Penalty)**

11. The default interest charged in connection with the December Note is DISALLOWED.

12. The late fees for the December Note are reduced from 10% to 5%.

13. There is an unsecured balance on the December Note in the amount of $156,274.09.[7]

---

[3] *See supra* footnote 2.
[4] This calculation was proposed by the Plaintiffs and agreed to by the Defendants. *See* Docket # 201 at ¶ 5; Docket # 213 at ¶ 10.
[5] All pre-judgment interest awarded in this Final Order shall be calculated upon single, non-trebled damages from the date this adversary proceeding was commenced. *Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 320-21 (1988); M.G.L. ch. 231, § 6B.
[6] *See* Docket # 201 at ¶ 5. The Court reviewed the Plaintiffs' fee application and found these attorneys fees reasonable in light of the complexity of the issues involved in the case. Several lengthy motions were filed and argued before the Court, the Plaintiffs conducted several depositions, and the trial spanned four days. The Defendants objected to these attorneys fees on two grounds: (1) $285 to $300 per hour for associate attorneys is excessive and (2) the Plaintiffs spent several hundred hours on their unsuccessful motion for summary judgment. The Court finds both of these arguments without merit.
[7] *See supra* ¶ 3 and footnote 1.

## COUNT X *
### (Unfair and Deceptive Acts and Practices: M.G.L. ch. 93A)

14.     The reasonable costs and fees associated with 201 Forest's Chapter 11 bankruptcy proceedings through June 30, 2009 total $219,124.75.[8] In accordance with the

---

[8] The Court understands that when time records were initially kept, counsel had no reason to anticipate that specifically allocating and categorizing entries between 201 Forest and 219 Forest would be necessary. The Court has thoroughly reviewed all of the fee applications to ascertain the fees and expenses that were incurred on account of 201 Forest's Chapter 11 bankruptcy proceeding. The Court has excluded fees and expenses related to 219 Forest's bankruptcy and the non-bankruptcy aspects of the land swap, the sale, the extension of the maturity date of the ING note, and leases. The Court also excluded the $20,000 fee to extend the maturity date of the ING Note as it was not clear whether the extension would have been necessary if 201 Forest had not filed its Chapter 11 bankruptcy case.

The $219,124.75 figure includes the following:

(A) Fees paid to the United States Trustee in the amount of $20,850.

(B) ING's legal fees and expenses in the amount of $60,000.

> The Court attempted to cull out legal services provided by ING that were unrelated to bankruptcy. The Court further reduced ING's legal fees and expenses because of potential duplication of services and lumping non-bankruptcy and bankruptcy categories in one time entry. Finally, the Court did not include fees and expenses in the amount of $5,931.50 incurrred subsequent to the filing of ING's fee application as no itemization of those services was provided.

(C) Hanify & King's fees associated with the use of Cash Collateral in the amount of $34,713.

(D) Hanify & King's fees associated with the General Administration of 201 Forest's bankruptcy case in the amount of $31,925.75.

> The Court has excluded fees associated with the non-bankruptcy aspects of 201 Forest's leases and the extension of the maturity date of the ING note. The Court did not exclude fees associated with the motions and stipulations to extend the maturity date of the ING note that were required to be filed with the Court.

(E) Hanify & King's fees associated with the Plan and Disclosure Statement in the amount of $8,806.

> As 219 Forest and 201 Forest filed a joint plan and disclosure statement, 201 Forest suggested that it would be reasonable to allow it 50% of the fees in this category. Based upon the Court's knowledge and experience with the complexity of the issues involved in 219 Forest's bankruptcy case compared with 201 Forest's solvency had LBM not received the 201 Forest guaranty and mortgage on the 201 Forest Property, the Court believes that 1/3 of the fees in this category to 201 Forest and 2/3 to 219 Forest is a more reasonable allocation.

(F) Hanify & King's fees associated with the discharge of LBM's mortgage on the 201 Forest Property in the amount of $37,073.

> The Court initially debated allocating time spent on this category between bankruptcy and non-bankruptcy work, but the mortgage and guaranty were products of the Defendants' actions that violated 93A. Thus, all of the legal fees in this category to secure the discharge of the mortgage were necessitated by the Defendants' 93A violations and are properly included.

4

Memorandum of Decision, this figure shall be trebled and awarded as 201 Forest's 93A damages. *See* Memorandum of Decision, Section II.E.7. [# 185].

15. Judgment for the Plaintiff 201 Forest against LBM in the amount of $657,374.25 with pre-judgment interest at a rate of 12 percent per annum plus $577,729.50 for 201 Forest's reasonable costs and attorney's fees for prosecuting this 93A Claim.

### COUNT XII *
### (Unfair and Deceptive Acts and Practices: M.G.L. ch. 93A)

16. For the reasons set forth in ¶¶ 9 and 10 herein and Section II.E.6 of the Memorandum of Decision, judgment for the Plaintiff 219 Forest against Mallegni in the amount of $1,648,608.15 with pre-judgment interest at a rate of 12 percent per annum plus $577,729.50 for 219 Forest's reasonable costs and attorney's fees for prosecuting this 93A Claim.

17. For the reasons set forth in ¶¶ 14 and 15 herein and Sections II.E.6 and II.E.7 of the Memorandum of Decision, judgment for the Plaintiff 201 Forest against

---

(G) Hanify & King's fees associated with the sale of the 219 Forest Property and Land Swap in the amount of $20,350.

> 201 Forest did not separate the usual and customary legal fees that would have been incurred during the sale process and land swap even if there had been no bankruptcy proceedings. Moreover, several of the time entries in this category were generally denoted as "sale of 219 Forest property" and did not specify whether the land swap was involved. It was very difficult to allocate the time entries in this category between 219 Forest and 201 Forest. The Court identified $29,945 in legal fees that appeared unrelated to the bankruptcy aspects of the sale and land swap such as purchase and sale, title, easement, and closing work, and reduced 201 Forest's request accordingly. 201 Forest suggested that the fees in this category should be equally split between it and 219 Forest. Based upon the Court's knowledge and experience with the sale process, the Court disagrees. The sale of the 219 Forest property and stipulation with LBM made up a greater portion of this category than did the land swap, which was the only aspect that involved 201 Forest. Accordingly, the Court believes that, after a reduction of $29,945, a 1/3 allocation of the fees in this category to 201 Forest is fair and reasonable.

(H) Hanify & King's expenses in the amount of $5,407.

> As there was no specificity as to whether expenses were related to 201 Forest or 219 Forest's case, the Court has included 1/3 of the total expenses as 201 Forest's damages.

5

Mallegni in the amount of $657,374.25 with pre-judgment interest at a rate of 12 percent per annum plus $577,729.50 for 201 Forest's reasonable costs and attorney's fees for prosecuting this 93A Claim.

### **OBJECTION TO LBM'S CLAIM FILED IN 219 FOREST'S CASE**

18. As $156,274.09 remains owed on the December Note and 219 Forest has paid the March Note in full, LBM's claim filed in 219 Forest's case is allowed as an unsecured claim in the amount of $156,274.09 subordinated to all of 219 Forest's creditors. *See* ¶ ¶ 3, 6.

Dated: August 21, 2009                                          By the Court,

                                                                                *Joel B. Rosenthal*

                                                                                _____
                                                                                Joel B. Rosenthal
                                                                                United States Bankruptcy Judge

---

\* The Defendants, LBM and Mallegni, are jointly and severally liable for the damages and attorney's fees awarded under Counts VI, X, and XII.

6