UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)

| | |
|---|---|
| In Re:<br><br>201 FOREST STREET LLC,<br>219 FOREST STREET LLC,<br><br>Debtors. | Chapter 11<br><br>Case Nos. 07-42296 - JBR<br>07-41768 - JBR<br>(Jointly Administered) |
| 219 FOREST STREET LLC, et al.<br><br>Plaintiffs,<br><br>v.<br><br>LBM FINANCIAL, LLC, and<br>MARCELLO MALLEGNI<br><br>Defendants. | Adv. Pro. No. 07-04097 - JBR |

**PLAINTIFFS' RESPONSE TO MOTION FOR STAY PENDING APPEAL AND
TO WAIVE OR REDUCE THE BOND REQUIREMENT**

Defendants provide no basis for exposing plaintiffs to a lengthy appeal process without security in the full amount of this Court's award of damages plus costs and interest pending appeal, especially in light of the defendants' lack of integrity in financial dealings proved over the course of this action and the well publicized volatility of the commercial lending business in which defendants engage. Defendants' attempt to shift the financial risk of their eventual inability to pay a judgment at the close of the appellate process onto the backs of plaintiffs and their creditors, when defendants have already had their day in court and failed to prevail, runs contrary to any notion of fairness. Defendants provide no reason to depart from the established

protections afforded to appellees by Fed. R. Civ. P. 62(d), requiring an appellant wishing to stay execution of a judgment pending appeal to post a supersedeas bond in the full amount of the judgment. Bankr. R. 7062 and Fed. R. Civ. P. 62(d). Their motion should be denied.

## ARGUMENT

This Court concluded, after four days of trial and nine witnesses, in sum, that "Mallegni lied to [plaintiff] 219 Forest, an entity in which he had an ownership interest, and [plaintiff] 201 Forest in order to vastly benefit his lending entity, LBM, and himself personally." Memorandum of Decision, June 30, 2009 ("Memorandum of Decision") at pp. 47-48. In doing so, the Court unequivocally concluded that Mallegni was not a "credible witness," and that his actions directly resulted in the bankruptcy of one of the otherwise financially healthy plaintiffs, and resulted in the loss of millions of dollars to the plaintiffs collectively. For the reasons carefully set forth in this Court's 77-page memorandum and subsequent Final Order, the plaintiffs[1] are entitled to the relief awarded fully secured by the supersedeas bond required by Fed. R. Civ. P. 62(d). "[A] plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes steps to assure that the judgment will be paid if it is affirmed." *Lightfoot v. Walker*, 797 F. 2d 505, 507 (7th Cir. 1986).

    A. The Defendants Have Not Met Their Burden Showing the Extraordinary Circumstances Necessary for a Stay of This Court's Judgment and Waiver of a Supersedeas Bond.

Without question, the only assured means of securing a stay of execution of judgment by Defendants is by posting of a bond to secure the judgment pursuant to Fed. R. Civ. P. 62(d), made subject to this adversary proceeding by Bankr. R. Civ. P. 7062. *In the Matter of Carlson*, 224 F.3d 716, 719 (7th Cir. 2000) ("Ordinarily a party is entitled to a stay pending appeal only by

---

[1] Plaintiffs are 201 Forest Street LLC and 201 Forest Street Realty Trust (collectively, "201 Forest") and 219 Forest Street LLC and 219 Forest Realty Trust (collectively, "219 Forest").

posting an appropriate bond"); *Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988) ("Rule 62(d) of the Federal Rules of Civil Procedure allows an appellant to obtain an automatic stay of execution of judgment pending appeal by posting a bond"); *United States v. Mansion House Center Redevelopment Co.*, 682 F. Supp. 446, 450 (E. D. Mo. 1988) (noting that appellant may obtain a stay of judgment "by posting an adequate supersedeas bond (and a full supersedeas bond is the norm)"); *Goldstein v. Bell (In re Normco, Inc.)*, 1997 WL 695722 *2 (N.D. Ill 1997) ("The bankruptcy court automatically grants a stay when an appellant posts a supersedeas bond that has been set by the court"); *Cipes v. Mikasa, Inc.*, 404 F. Supp. 2d 367, 369 (D. Mass. 2005), *aff'd*, 439 F.2d 52 (1st Cir. 2006) ("Fed. R. Civ. P. 62(d) allows an appellant to obtain a stay of monetary judgment against it by posting a supersedeas bond," noting that the Massachusetts District Court's Local Rules require the bond to include an additional 10% to "cover interest and any award of damages for delay plus Five Hundred and no/100 ($500.00) Dollars to cover costs, unless the court directs otherwise").

Where, as here, the appellants seek the court's discretionary authority to allow a stay without the requisite security, courts have carefully scrutinized both the strength of the appellant's likelihood of success on appeal, as well as the financial reasons it proffers for sidestepping the bond requirement. Unequivocally, the appellants bear the heavy burden of making the case for a stay and waiver. *De La Fuente v. DCI Telecommunications, Inc.*, 269 F. Supp.2d 237, 240 (S.D.N.Y. 2003); *Schreiber v. Kellogg*, 839 F. Supp. 1157, 1159 (E.D. Pa. 1993).

While the court most often will be called upon to exercise its discretion when presented with a stay pending appeal in the context of a simultaneous request to reduce or eliminate a bond (because, if a bond is posted the stay is automatic, eliminating any need for review by the court),

3

those circuits that have examined the question have adopted different evaluative approaches. One approach examines the merits of a discretionary stay employing the same four factors used when appraising the merits of preliminary injunctive relief. "An appellant must show that it is likely to prevail on appeal, that it will suffer irreparable injury unless a stay is granted, that the appellee will not be substantially injured by the stay, and that the public interest will not be harmed by a stay." Sally E. Edison, David I. Swan, Commercial Bankruptcy Litigation, § 12:10 (2009 Thompson Reuters) ("Injunction Standard"). *Accord, Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990); *Farm Credit Services of the Midlands v. Fremont Sheep Corp.* (In re *Fremont Sheep Co.*), 110 F.3d 73, 1997 WL 174116 *2 (10th Cir. 1997) (unpublished opinion); *Goldstein*, 1997 WL 695722 *2; *Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.*, 932 F. Supp. 1147, 1148 (S.D. Ind. 1996).

Still other courts focus on factors related to the bond waiver itself, measuring waiver against the bond's purpose in providing security for judgment post-appeal, rather than the merits of the appeal.

> When determining whether to waiver the posting of bond, the district court may look to several criteria enumerated by this court: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the [trial] court has in the availability of funds to pay the judgment . . .(4) whether 'the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money' . . . .(5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*City of Chicago*, 866 F.2d 904-905 ("City of Chicago" standard). *Accord, Cipes*, 404 F. Supp. 2d at 369-370 (noting that the First Circuit had "not directly addressed the question of when district court may allow a stay that is unsecured by a supersedeas bond," but noting that "the

4

bond requirement is explicitly described in both the federal and local rules, an appellant should, as a general matter, be obliged to satisfy it"). In fact, a number of district courts in the Third Circuit require a appellant to demonstrate that "posting a bond is impossible or impractical" and will not modify the bond requirement unless appellant posts alternative security. *Silver v. Mendel*, 1992 WL 163285 *2 (E.D. Pa. 1992); *Porter v. Nationscredit Consumer Discount Company*, 2007 WL 674709 *1 (E.D. Pa. 2007).

Regardless of the analysis applied, the defendants have failed to make a sufficient showing on either the merits of their appeal or a satisfactory justification for a waiver of the bond requirement.

B. <u>Defendants' Cursory Reference to Affordability of Bond is Inadequate</u>.

While the burden rests squarely on their shoulders, the defendants make no effort to explain to this Court why a supersedeas bond is beyond their reach, other than to summarily declare that providing security "threatens devastating harm." Such self-serving, unverified statements fall far short of satisfying "the burden of demonstrating objectively the need for departure from the usual requirement of full security." *Schreiber*, 839 F. Supp. at 1159.

Of its twenty-eight-page brief, defendants devote a mere two sentences to the supposed "irreparable harm" they will suffer if required to post a bond in an amount more than $200,000. While asserting that a bond in the full amount of the judgment will be "impossible" or will "deplete the working capital necessary for the defendants" to operate their business, they provide no affidavits, no financial statements, no evidence of any effort to obtain a bond (which is often available at a small fraction of the face value of the bond, *Olympia Equipment Leasing Company v. Western Union Telegraph Company*, 786 F.2d 794, 796-797 (7th Cir. 1986) (noting that standard fees for a bond is 1% of face value)).

> [T]he onus is on defendant to establish good cause for a waiver or reduction of the bond requirement. Here, defendant has merely stated without elucidation that obtaining a bond would be a hardship for him given the local bonding requirements. Such a bald statement is insufficient to constitute "extraordinary circumstances.

*Schreiber*, 839 F. Supp. at 1161. See also, *United States v. Kurtz*, 528 F. Supp. 1113, 1116 (E.D. Pa. 1981) (court denied a stay without a bond where defendant failed to support his assertions of inability to post bond with financial statements and affidavits).

Regardless of whether this Court adopts the Injunction Standard or the City of Chicago Standard for assessing the defendants' motion, their utter failure to provide a credible, well-supported basis for waiver rooted in their financial circumstances dooms their motion to failure. Defendants have not met their burden to show irreparable harm if the stay and bond reduction/waiver is not allowed. Regardless of how meritorious defendants believe their appeal to be, without irreparable harm, their motion fails. *De La Fuente*, 269 F. Supp. 2d at 240 ("Because a supersedeas bond is a designed to protect the appellee, the party seeking the stay without a bond has the *burden of providing specific reasons* why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment" (emphasis supplied)). Nor do defendants provide sufficient information to allow the court to evaluate the criteria under the City of Chicago standard, which would most likely center on the fifth enumerated criterion – whether the bond requirement is so onerous that it would place defendants' other creditors "in an insecure position." Aside from a passing reference to "customers" and "investors," the defendants make no specific reference to its creditors and how their fate may be affected, if at all, by whatever financing arrangement may be available to defendants to fulfill a bond requirement.

6

Defendants protestations regarding the supposed devastation attendant to posting a bond are particularly inappropriate given that 219 Forest was required to pay over $2.1 million of the proceeds of the sale of its property to the defendants just two years ago, despite that this adversary proceeding was pending and had the potential to undercut or offset any monies owed to defendants. The payment was made contingent, however, on the outcome of the lawsuit, and the parties included disgorgement provisions in the stipulation governing 219 Forest's payment, in the event of a verdict in favor of plaintiffs. Defendants by their motion to stay and waiver of the bond, not only undermine plaintiffs' entitlement to security for their judgment under Rule 62(d), but also attempt to forestall the benefit of the bargain the parties reached in 2007, by avoiding the disgorgement provisions of the parties' stipulation. *See Stipulation By and Among 219 Forest Street, LLC, 201 Forest Street, LLC and LBM Financial LLC Concerning Sale of Real Estate* [Chapter 11 Docket No. 100]. That defendants had use of millions of dollars provided by 219 Forest without a judgment (in effect a prejudgment payment), render defendants' claimed financial inconvenience wholly unsympathetic.

    C. Defendants Have Not Met the Injunctive Standards For A Discretionary Stay of Judgment and Reduction or Waiver of the Supersedeas Bond.

Mallegni and LBM devote the lion's share of their argument not to the Court's determination on liability, but rather to "the validity of the monetary awards." Memorandum in Support of Defendants' Motion for a Stay Pending Appeal and to Waive or Reduce the Bond Requirement ("Defendants' Memo") at p. 2. However, this Court's careful and deliberate

reasoning, which resulted in final orders on damages, is well supported by both the law and the facts presented at trial[2].

1. <u>The Final Orders of this Court are Unassailable.</u>

   a. <u>All Damages Awarded Pursuant to Chapter 93A Were Actual Damages and Properly Multiplied As a Result of the Defendants' Knowing and Willful Violations of the Statute.</u>

Assuming, for purposes of argument, that defendants' statement of the law of Chapter 93A is accurate, i.e., that defendants may only recover "actual damages" under the statute that were paid, there is no defect in the Court's award. All damages ordered by the Court were in fact paid by plaintiffs, which can be verified by reference to the stipulated facts introduced at trial.

<u>Default Interest for 2004.</u> The Court found that 219 and LBM had reached agreement on the essential terms of an extension of the December Note[3] for one year, but then Mallegni imposed as a condition to the extension that LBM's attorney be released from a lease comprising a $600,000 obligation with another entity. Memorandum of Decision at 16-17. The extension was not consummated once the lease condition was imposed, as 219 Forest had no ability to grant such a release. *Id.* The Court found, "LBM's demand to release its attorney from a $600,000 lease obligation and enable Mallegni to collect rent from its attorney, in exchange for a one-year extension of the December Note can only be characterized as 'coercive' and 'extortionate'." Memorandum of Decision at p. 52. In conclusion, the Court stated, "LBM's successful attempt to make the assessment of the default interest unavoidable was a glaring violation of 93A." *Id.* at 53.

---

[2] Rather than refute or repeat the defendants' factual background and procedural history, 201 and 219 Forest will rely on the Court's Memorandum of Decision and assert facts and references to record evidence as and where necessary.

[3] The plaintiffs adopt the capitalized terms used by the Court in its Memorandum of Decision, which shall have the same meaning unless otherwise noted.

8

The Court then concluded the proper damages comprised an assessment of the default rate of interest for the one-year period from January 20, 2004 through December 20, 2004, a period that otherwise would have been covered by the abandoned extension, amounting to $376,757.91. *Id.* From this sum, an extension fee was subtracted (which would have been charged if the extension had been granted), leaving total damages at $324,747.27. *Id.* After a finding of willful behavior, this sum was trebled.

In the first instance, the defendants attack the Court's award claiming that the default interest was never paid, thus undermining its characterization as "actual damages." Their analysis conveniently ignores two fundamental circumstances:

First, the terms of the December Note, Plaintiff's Exhibit 27, states:

> Payment made hereunder shall be applied first to the payment of interest on the principal balance then outstanding at the applicable rate of interest, and the remainder of each such installment payment, if any, shall be applied to reduce the principal balance . . .

December Note at p. 2. Furthermore, upon default, the note allowed "[a]ll unpaid interest, penalties and fees shall be added to the principal balance, and interest shall then be calculated on the new principal balance." *Id.*

Second, 219 Forest paid over $2.1 million in partial satisfaction of the December Note, which required interest to be paid first. In their Joint Pretrial Memorandum, the parties agreed that 219 Forest made payments pursuant to the December Note totaling $759,738, of which all but approximately $240,000 was paid after December of 2003 and was applied by LBM per the note[4]. Joint Pretrial Memorandum, p. 32 at par. 63. In addition, they agreed, "[o]n September 17, 2007, from the proceeds of the sale of 219 Forest's real property paid to LBM, LBM applied

---

[4] The LBM ledgers reflect that all payments from January, 2004 forward were applied to interest.

9

$1,434,928.56 to the December Note." *Id.* at par. 62. From the nearly $2.2 million paid by 219 Forest from the inception of the Note in December of 2002 until September of 2007, and given that interest was paid first by the terms of the Note, it is inconceivable that 12 months of default interest that accrued in 2004 was not paid[5].

Misapplication of 219 Forest's Payment of $32,459.11. The Court also found that Mallegni caused the misapplication of a payment amounting to $32,459.11, which should have been credited in 2002 against the March Note (and initially it was) but later was unilaterally re-directed by Mallegni's staff to another note unrelated to this adversary proceeding (the "Misapplied Payment"). Memorandum of Decision at pp. 10-11, 30. Mallegni's purposeful misapplication of this payment allowed him to assess and *collect* $182,329.67 in default interest from defendants. Contrary to defendants' assertion, the case for payment of the default interest on the Misapplied Payment is clear[6].

Defendants stipulated to certain facts prior to trial regarding the March Note. These facts establish that as of May 20, 2002, LBM assessed a default rate of interest on outstanding amounts due under the March Note. Joint Pretrial Memorandum, at p. 31, par. 58. The Misapplied Payment was received on or about June 17, 2002. *Id.* at par 55. As of May of 2007, defendants calculated that the total outstanding amount on the March Note, including principal, default interest, late and other fees, totaled $652,806.65. Of the proceeds from the September 2007 sale of 219 Forest's assets, $712,899.22 was paid in satisfaction of the March Note. *Id.* at pars. 53 and 62; Defendants LBM Financial's and Marcello Mallegni's Proposed Findings of

---

[5] Even if $900,000 of the sale proceeds was applied to principal in September of 2007 (which arguably included the 2004 default interest that should have been added to principal upon declaration of default), 219 Forest still paid nearly $1.3 million in interest, more than enough to have covered default interest accrued in the second year of the loan.

[6] Defendants do not contest that the Misapplied Payment of principal was made.

Facts and Rulings of Law [Docket No. 223], p. 22 at par. 129; Final Order [Docket No. 223], p.2 n.2. Defendants in receiving and accepting over $700,000 in satisfaction of the March Note cannot argue that that the default interest attributable to the Misapplied Payment was not paid by 219 Forest. Unquestionably, 219 Forest was damaged by defendants' actions, which were deceitfully manipulated to inflate 219 Forest's obligation to LBM and concomittantly increase Mallegni's leverage, in at least the amount of the Misapplied Payment and default interest accrued and paid.

Defendants next attempt to reduce the Court's award of damages on the March Note (in the amount of $32,459.11 in principal that was never credited, as well as $182,329.67 in default interest, trebled) by claiming the appropriate remedy is limited to single damages in the amount of $32,459.11 as an equitable remedy. The defendants cite to *Schwartz v. Rose*, 418 Mass. 41, 634 N.E.2d 105 (1994) for support. However, in that case, the plaintiff sought rescission of a real estate transaction, returning the parties essentially to the *status quo*. Clearly, rescission is not possible in this case, as the defendants' wrongful actions were an essential catalyst in the financial demise of 219 Forest and 201 Forest. As *Schwartz* teaches, the appropriate measure of damages for 93A violations, is the loss "suffered by the plaintiff because of the interruption of in the status quo." *Id*. at 47-48, 634 N.E.2d 105. To say the least, the change in the *status quo* for 219 Forest was not limited to LBM's purposeful failure in 2002 to credit $32,459.11 against the March Note, but resulted in 219 Forest's overpayment of more than $180,000 in default interest, which, as demonstrated above, was most definitely paid. Even if the defendants were correct that the crediting of the *principal payment* was in the nature of equitable relief, the damage award would only be adjusted by the amount of $64,918.22 (the doubling of that amount per 93A), which should be reduced by an amount to reflect the 219 Forest's loss of use of those

11

funds for the seven years between June 17, 2002, when the payment was made, and the final order.

    b. **The Remainder of Defendants' Arguments Would Require an Appellate Court to Set Aside this Court's Findings of Fact as Clearly Erroneous in Favor of Defendants' <u>Speculatory and Unsupported Conclusions</u>.**

Most significantly defendants would have the Court reverse its well supported conclusion that Mallegni's misrepresentation regarding Commerce Bank's insistence on an immediate loan payoff in the fall of 2002 resulted in LBM substituting itself as 219 Forest's lender and extorting numerous financially detrimental concessions from the defendants, including a guaranty from 201 Forest. The Court concluded that Mallegni's actions were part of a calculated scheme,

> Mallegni did not elect to exercise this bargained for right [to receive the remaining 60% of 219 Forest under the Repurchase Agreement] because he apparently perceived that the alternative course of a refinance with LBM (and payment of the prior Commerce loan he held personally) would generate more value. Instead of becoming the effective 100% owner (60% Mallegni and 40% Wolfpen) of 219 Forest and its undeveloped land, the misrepresentation paved the way for Mallegni to put 219 Forest into a loan with suffocating terms *and* obtain a valuable piece of collateral from 201 Forest that would be available to foreclose on when the consequences of the suffocating terms came to fruition.

Memorandum of Decision at pp. 35-36 (emphasis in original). Despite the Court's thorough description of Mallegni's manipulation and deception creating a financing crisis for 219 Forest by acting as Commerce's intermediary with respect to its imminent calling of its loan (which raises further issues of breaches of Mallegni's fiduciary duties given that he was a 40% owner of 219 Forest at the time through Wolfpen), the defendants disingenuously contend that the Court fails to make the nexus between Mallegni's misrepresentation and his ultimate ability to procure a commercially detrimental lending arrangement with defendants. In fact, this Court found that Mallegni orchestrated his misrepresentation precisely to accomplish his two-pronged strategy. He at once forced

12

219 Forest's back to the wall such that it accepted "suffocating" financing terms that would likely result in default and second, he demanded that 201 Forest become a guarantor to 219 Forest's debt so that its assets would be available when the likely default occurred. The facts developed at trial amply supply this Court with the evidence to conclude that Mallegni took advantage of his position as part owner of 219 Forest to steer its financing decisions, to orchestrate the timing of lending squeeze by Commerce Bank, and to "save" 219 Forest by providing substitute financing that "incidentally" allowed LBM to expand its spoils upon default to include 201 Forest's assets.

Defendants next make an attenuated argument regarding the personal guaranties of Robert and David DiPietri on the Commerce Note, which they apparently attempt to tie to 201 Forest's guaranty of the December Note. Defendants' Memorandum, pp. 21-25. However, that loop is never closed and the relevance of these nonparties' guarantees of the Commerce Note to that of 201 Forest of the December Note is elusive, at best. Furthermore, defendants completely mischaracterize the causal misrepresentation at issue as the defendants' belief "that Mallegni had not yet been required to perform under the Repurchase Agreement." Defendants' Memorandum at 24. However, as the Court found, Mallegni's misrepresentation was his incessant refrain that Commerce required payoff by year-end when he knew that was not so (because he had already purchased the December Note), which drove 219 Forest's unfavorable refinance with LBM and 201 Forest's fatal guaranty.

2. Defendants Have Made No Showing of Hardship.

For the reasons outlined *supra,* at Section B, LBM and Mallegni provide no objective basis to measure hardship, if any, that would result either from posting a supersedeas bond or denial of a stay. Without affidavits, financial statements, or evidence of failed attempts to finance a bond,

13

their conclusory statements that denial of their motion would cause harm are entirely insufficient, especially when weighed against the judgment issued in the plaintiffs' favor after a full blown trial.

3. Plaintiffs and Their Creditors Would Unfairly Shoulder Risk of Collection if Judgment is Stayed Without a Bond.

The final two elements of the Injunction Standards, the injury to the appellees and injury to the public interest if bond is waived and stay allowed, share a common thread. While the defendants cast their motion for waiver in light of the consequences of imposing a bond on their finances (although without support), the inevitable consequence of waiving a bond and preventing immediate efforts to collect the judgment shifts the risk of collection at the end of a lengthy appeal process onto 201 Forest, 219 Forest, and their creditors. Such a result would add insult to injury. *Endress + Hauser, Inc.*, 932 F. Supp. at 1151 ("'Now that [plaintiff] has carried its burden and possesses a judgment, it is entitled to be made secure during the steps leading to the final disposition,'" quoting, *BASF Corp. v. Old World Trading Co.*, 979 F.2d 615, 617 (7th Cir. 1992)).

In drawing its conclusion that LBM's claims should be equitably subordinated to those of other creditors, the Court made extensive findings of LBM's inequitable conduct, which resulted in injury to plaintiffs' other creditors and unfairly benefitted LBM. Memorandum of Decision at pp. 32-43. The defendants do not dispute these findings in their motion. Furthermore, after the sale of 219 Forest's property in 2007, over $2 million was paid to LBM over other creditors, despite the pendency of this action. Until the point of judgment then, defendants have received the benefit of the doubt and the bulk of the plaintiffs' assets. Given the evidence educed at trial, the Court's careful decision finding extensive wrongdoing by the defendants and substantial damage to the plaintiffs, and bankruptcy policy, the plaintiffs and their creditors should be

relieved of any further obligation to shoulder the risk of collecting judgment. *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d a794, 802 (7th Cir. 1986) (noting that appellant "wants plaintiff to bear, for free, risk it would have to pay a bank to assume. But this is an argument in favor of a bond or other security, not an argument against it"); *Schreiber*, 839 F. supp. at 1159 ("The purpose of the supersedeas bond is to preserve the status quo during the pendency of an appeal. It protects the winning party from the possibility of loss resulting from the delay in execution").

## CONCLUSION

For the reasons stated herein, 219 Forest Street LLC, 219 Forest Street Realty Trust, 201 Forest Street LLC, and 201 Forest Street Realty Trust, respectfully request that defendants' Motion for Stay Pending Appeal and to Waive or Reduce the Bond Requirement be denied and that defendants be required to post a bond in the full amount of the Court's final orders, along with 10% to account for interests and costs of appeal.

Respectfully Submitted,

219 FOREST STREET LLC, 219 FOREST STREET REALTY TRUST, 201 FOREST STREET LLC, AND 201 FOREST STREET REALTY TRUST,

By their counsel:

*/s/ Charles R. Bennett, Jr.*
Charles R. Bennett, Jr. (BBO #037380)
Kathleen E. Cross (BBO#556934)
HANIFY & KING
One Beacon Street
Boston, Massachusetts 02108-3107
617-423-0400
crb@hanify.com

539518

**CERTIFICATE OF SERVICE**

      I, Charles R. Bennett, Jr., hereby certify that on September 8, 2009, I caused a copy of the foregoing *Plaintiffs' Response to Motion for Stay Pending Appeal and to Waive or Reduce the Bond Requirement* to be served by operation of the Court's CM/ECF system upon the following parties of interest:

Floyd H Anderson    fanderson@legalpro.com
Meegan Casey    mcasey@riemerlaw.com
Philip F. Coppinger    Pcoppinger@leamar.net
Kevin C. McGee    bankruptcy@sederlaw.com, kmcgee@sederlaw.com


                                          /s/ Charles R. Bennett, Jr.
                                          Charles R. Bennett, Jr.